IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION

| | |
|---|---|
| MATTHEW URBAN,<br><br>    Plaintiff,<br><br>v.<br><br>LOWE'S COMPANIES, INC., a North Carolina Corporation; and SHAWN BANDY, an individual,<br><br>    Defendants. | Civil File Number:<br><br>5:25-cv-168<br><br>ORIGINAL COMPLAINT<br><br>Jury Trial Demanded Under Fed. R. Civ. P. 38(b) |

## INTRODUCTION

1. This case arises from Defendant Lowe's Companies, Inc.'s ("Lowe's") race-based, gender-based, and military-service-based termination of Plaintiff Matthew Urban ("Urban").

2. Urban is a fourteen-year veteran of the Army and Airforce who currently serves in the National Guard.

3. He worked for Defendant Lowe's Companies, Inc. ("Lowe's") for five years as a security expert before being unlawfully terminated in October of 2024.

4. Lowe's terminated Urban's employment after receiving false statements from Defendant Shawn Bandy ("Bandy") alleging that Urban had showed up at his residence in Tennessee, while Urban was there for National Guard training, and had threatened Bandy with physical harm.

5. Lowe's violated its own policies and did not investigate or substantiate these off-

work and off-site allegations. Instead, Lowe's decided to fire Urban on the very same day Bandy made these allegations, without even affording Urban the opportunity to be heard.

6. Lowe's fired Urban because he was a white male and a veteran.

7. Urban's race, gender, and military status alone substantiated for Lowe's that Urban was aggressive and violent and thus unsuitable for employment.

8. Ms. Keisha Farrington ("Farrington"), of Lowe's Human Resources Department, fired Urban in a meeting on the morning of October 23, 2024.

9. Farrington is biased and actively promotes race-based hiring and employment decisions as evidenced by her LinkedIn page, which has the large headline banner that states, *"I am Black in HR, www.theblackinhr.com, @therealblackinhr, Join My Tribe."*

10. 'The Black In HR' is a race-based group promoting the hiring and advancement of blacks.

11. Farrington states that she is an elite and active member of this organization in parallel to working at Lowe's.

12. Plaintiff is informed and believes and therefore alleges that Farrington works with senior executives at Lowe's to build a constitutionally volitive workforce and culture that is racially biased.

13. Farrington states on LinkedIn that her role at Lowe's is to *"serve as a trusted advisor to senior leaders, guiding decisions on performance, pay, and culture."*

14. Farrington also states on LinkedIn that her parallel role in 'The Black In HR' is to "driv[e] impact across industries." Lowe's is aware of Farrington's openly biased LinkedIn profile and Lowe's openly encourages it.

15. Urban asserts claims for (1) race and gender discrimination under Title VII and 42

U.S.C. § 1981 against Defendant Lowe's; (2) military service discrimination under USERRA, 38 U.S.C. § 4301 et seq. against Defendant Lowe's; (3) public policy violation against Defendant Lowe's; (4) tortious interference against Defendant Bandy; and (5) defamation against Defendants' Lowe's and Bandy.

## VENUE AND JURISDICTION

16. This Federal Court has jurisdiction over this action under 28 U.S.C. § 1331 because this action arises under the U.S. Constitution and federal statutes, under.

17. Venue is proper under 28 U.S.C. § 1391(b) (1) and (c).

18. This Federal Court has: (1) federal question jurisdiction under 28 U.S.C. § 1331 (Title VII, USERRA), § 1343 (civil rights); (2) diversity jurisdiction under 28 U.S.C. § 1332; and (3) supplemental jurisdiction over state law claims under 28 U.S.C. § 1367.

19. This Federal Court has personal jurisdiction over Bandy because, inter alia, he purposefully availed himself of jurisdiction by directing false statements and accusations about Urban to Lowe's HR, management, and/or others in North Carolina, intending and reasonably expecting their publication and resulting harm to occur here, and the brunt of the injury occurred here (Calder "effects" test). Fed. R. Civ. P. 4(k)(1)(A); N.C. Gen. Stat. § 1-75.4.

20. **There is supplemental jurisdiction**: over Shawn Bandy under **28 U.S.C. § 1367(a)** because the causes of action arise from the **same case or controversy** constituting a common nucleus of operative fact—involving specific workplace events/communications.

## PARTIES

I. **PLAINTIFF**

21. **Matthew Urban** is a North Carolina citizen and veteran of the United State Armed Forces. He's proudly served for fourteen years, was honorably discharged from the U.S. Army

Reserves on January 15, 2019, and currently serves in the Tennessee Air National Guard.

## II. DEFENDANTS

22. **Lowe's Companies, Inc.** is a company incorporated and based out of North Carolina.

23. **Shawn Bandy** is a Tennessee Citizen and veteran of the United States Armed Forces. He was honorably discharged from the Army and also currently serves in the Tennessee Air National Guard.

## ADMINISTRATIVE EXHAUSTION (TITLE VII)

24. Plaintiff timely filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging race and gender discrimination and received a Notice of Right to Sue dated July 24, 2025.

25. This action is filed within 90 days of receipt.

## FACTUAL ALLEGATIONS

26. Plaintiff Matt Urban ("Urban") resides in North Carolina and is a fourteen-year veteran of the United States Army and Air Force, achieving the rank of Staff Sergent.

27. Urban was honorably discharged from the U.S. Army Reserves on January 15, 2019. He currently serves as a reservist in an Intelligence Unit of the Air National Guard based out of Nashville, Tennessee.

28. Urban worked for Lowe's Companies, Inc. ("Lowe's") in Mooresville for approximately five years with no performance improvement plans (PIPs), written warnings, or prior discipline.

29. Upon information and belief, Defendant Shawn Bandy ("Bandy") resides in Nashville, Tennessee and he is veteran on the United States Armed Forces.

30. Bandy was honorably discharged from the Army and currently serves in the same Intelligence Unit of the Air National Guard as Urban.

31. Urban and Bandy are brothers-in-arms. They were also long-time friends.

32. The U.S. Military's ethos emphasizes protecting one's fellow service members, exemplified by Army tenet, *"I will never leave a fallen comrade."* This underscores the deep bond of camaraderie throughout the military. This includes protecting the mental health and safety of fellow brothers-in-arms.

33. Military personnel are also required to take suicide prevention courses on an annual basis.

34. Bandy was also a citizen of North Carolina. As a condition of his employment with Lowe's, Bandy relocated from Nashville, Tennessee, to the Charlotte area in or around late 2019 or early 2020.

35. During the onset of the COVID-19 pandemic in 2020, Lowe's implemented a mandatory work-from-home policy for nearly all employees assigned to its Mooresville, North Carolina headquarters, with the exception of a small handful of individuals in critical roles.

36. Employees outside those critical roles were prohibited from entering the office and required executive-level approval merely to retrieve personal or work-related items.

37. As a result of this policy, both Urban and Bandy transitioned to full-time remote work and ceased regular attendance at the Mooresville headquarters.

38. Prior to this change, both Urban and Bandy had been physically present in the office five days per week.

39. Lowe's maintained this mandatory remote-work policy for approximately two years.

40. Bandy suffered medically diagnosed mental health issues that affected significantly his quality of life. Bandy took medication to manage these conditions.

41. Following the transition to remote work, Bandy began exhibiting significant signs of emotional distress and depression.

42. Bandy expressed to Urban and others that he felt isolated and wanted to return to Nashville, Tennessee, to be closer to his friends, family, and the life he had previously been accustomed to.

43. Urban was fully aware of Bandy's mental health issues and his desperate desire to relocate back to Nashville.

44. In a show of support and concern, Urban assisted Bandy in navigating the process of requesting permanent remote-work status from Lowe's, researching applicable company policies, speaking with human resource employees, and preparing documentation to submit to Human Resources.

45. While Urban and Bandy were technically fully remote due to Lowe's new mandatory remote-work policy, they were still regarded as being assigned to the Mooresville headquarters and could be called back into the office at any time.

46. With Urban's guidance and advocacy, Bandy presented his case to Lowe's Human Resources Department (and their boss, Jefferson Pike), which ultimately approved his request for a permanent remote-work status.

47. Lowe's thereafter authorized Bandy's relocation back to Nashville, Tennessee.

48. At that time, and even now in 2025, obtaining permanent remote-work status within Lowe's Information Security department was extraordinarily rare.

49. Out of around 400 employees in the Lowe's Information Security department, only

a few hold remote designations; most of those employees are required to travel to the Mooresville or Charlotte, North Carolina offices for several days, on a monthly or bimonthly basis.

50. Bandy has a fully remote status, and while he has traveled to the Mooresville or Charlotte, North Carolina offices since, Bandy is under no obligation to do so, making Bandy's approval a notable and exception case.

51. Bandy's mental health issues also forced him to separate from the military.

52. Urban was a military comrade and friend who actively helped Bandy through his mental health issues.

53. Urban also helped Bandy write his exit papers for the military, which allowed Bandy to separate from the military early and allowed Bandy to stop attending monthly drills, due to Bandy's mental health issues.

54. In 2024, Bandy became withdrawn towards Urban and other mutual friends, behavior consistent with Bandy's prior episodes of mental health issues.

55. Urban was genuinely concerned with Bandy's behavior due to the high risk of suicide and self-harm among veterans, among other reasons.

56. In October 2024, while in Nashville for military drills, Urban decided to do a welfare check on Bandy, who lived in Nashville.

57. For years, Urban regularly visited Bandy's apartment while training in Nashville, with the visits being normal and expected.

58. On October 21, 2024, Urban informed Bandy that he was coming over.

59. Bandy did not tell him not to come over.

60. On October 21, 2024, Urban arrived at Bandy's apartment and knocked.

61. Bandy came outside and, over several minutes, repeatedly threatened to harm

Urban and to end Urban's life.

62. Urban remained calm and caring and decided to quickly leave for his own safety.

63. The threats Bandy made against Urban were unprovoked and occurred while Urban was conducting a welfare check, highlighting the severity of Bandy's conduct and the immediate danger he posed.

64. On October 22, 2024, Lowe's received a complaint from Bandy who falsely asserted that Urban had arrived unannounced at his place and had repeatedly threatened him.

65. Bandy did not contact law enforcement or his (or Urban's) military chain of command to make the same false allegations.

66. On October 22, 2024, within hours of receiving the complaint from Bandy, Lowe's decided to terminate Urban's employment while he was performing his National Guard duties.

67. Later in the afternoon, Urban's boss, Jefferson Pike ("Pike") sent a message to Urban's team instructing them not to show up at work on October 23, 2024, and instead to work from home that day.

68. The following morning, Wednesday October 23, 2024, at 9:00 a.m., Pike texted Urban requesting him to join a Teams meeting.

69. On that Microsoft Team's meeting, Lowe's HR representative, Ms. Keisha Farrington ("Farrington"), terminated Urban's employment with Lowe's.

70. While Lowe's had decided to fire Urban on October 22, they decided to wait until October 23, because Urban was drilling with the National Guard in Nashville, Tennessee through October 22.

71. At the Microsoft Teams meeting, Lowe's refused to provide Urban adequate detail as to why they were terminating his employment.

72. Farrington implied that she believed Urban posed a threat or was violent without any basis.

73. Plaintiff is informed and believes and therefor alleges that Farrington believed that Urban was violent based upon his prior service in the military and current attachment to the National Guard and should be terminated solely because he was a white male veteran.

74. Lowe's has a written policy requiring it to investigate and substantiate all claims of harassment made against employees such as Urban.

75. Lowe's failed to follow its own policy to investigate the allegations made by Bandy and Lowe's never substantiated them. Lowe's never attempted to speak with Urban.

76. And Lowe's never attempted to speak with colleagues or friends of both of them or with anyone who may have had knowledge.

77. Plaintiff is informed and believes and therefor alleges that Lowe's fired Urban instantly because despite outward representations Farrington, among others, believe white male veterans are inherently violent.

78. Lowe's did not investigate the allegations because Urban was a white male veteran, and to Lowe's, that was substantiation enough.

79. At no point did Lowe's request to speak with Urban, as information or testimony from a white male veteran accused of violence was deemed irrelevant.

80. Plaintiff is informed and believes and therefore alleges Lowe's maintains a pattern of conduct or established custom of automatically treating allegations of violence as true, when the accused employee is a white male and/or veteran.

81. Plaintiff is informed and believes and therefore alleges Lowe's maintains a pattern of conduct or established custom of taking swift action and terminating the employment of white

males and veteran employees who are accused of violence without conducting an investigation to determine the veracity of the allegations.

82. Lowe's does NOT equally maintain a pattern of conduct or established customs of automatically treating allegations of violence as true when the accused employee is not a white male or veteran.

83. Lowe's does NOT equally maintain a pattern of conduct or established customs of taking swift action and terminating the employment of employees who are not white males or not veterans when they are accused of violence, nor does Lowe's bypass conducting an investigation to determine the veracity of such allegations.

84. Lowe's terminated Urban's employment because he was a white male veteran.

85. Lowe's would not have terminated Urban's employment if he had not been a white male veteran.

## COUNTS

### Count I

**RACE AND GENDER DISCRIMINATION (TITLE VII) 42 U.S.C. § 2000e-2**

(Against Defendant Lowe's)

86. Urban re-alleges and incorporates by reference the allegations in the previous paragraphs.

87. Urban was a member of a protected class (race) and (gender).

88. Lowe's terminated Plaintiff and otherwise adversely affected the terms and conditions of employment.

89. Race and gender were motivating factors in the decision, as evidenced by the failure to investigate, reliance on inflammatory stereotypes, and treatment harsher than that of similarly

situated non-white and/or non-male employees.

90. Lowe's acted with both purposeful intent and reckless or callous indifference towards Urban's rights, thereby entitling Urban to punitive damages.

91. Thus, as a direct and proximate cause of the actions of the Lowe's, Urban suffered damages in an amount in excess of $75,000.

92. Urban is entitled to recovery of costs, including reasonable attorney's fees under 42 U.S.C. § 1988.

## Count II

## USERRA DISCRIMINATION 38 U.S.C. § 4311

(Against Defendant Lowe's)

93. Plaintiff repeats and re-alleges each of the foregoing paragraphs as if set forth fully herein.

94. Urban regularly trained in Nashville, which required him to miss an average of several days of work at Lowe's every couple of months.

95. Pike, Urban's boss, did not like Urban missing work due to his military service. He made this known through negative comments towards Urban when Urban would seek time off for military service.

96. Lowe's terminated Plaintiff, and his military status and obligations were a motivating factor in that adverse employment action, including reliance on stereotypes that he was "aggressive" or "violent."

97. Lowe's actions violated Uniformed Services Employment and Reemployment Rights Act (USERRA) § 4311.

98. Lowe's acted with both purposeful intent and reckless or callous indifference

towards Urban's rights, thereby entitling Urban to punitive damages.

99. Thus, as a direct and proximate cause of the actions of Lowe's, Urban suffered damages in an amount in excess of $75,000.

100. Urban is entitled to recovery of costs, including reasonable attorney's fees under 42 U.S.C. § 1988.

## Count III
## WRONGFUL DISCHARGE IN VIOLATION OF NORTH CAROLINA PUBLIC POLICY

(Against Defendant Lowe's)

101. Plaintiff repeats and re-alleges each of the foregoing paragraphs as if set forth fully herein.

102. North Carolina public policy (including N.C. Gen. Stat. § 143-422.2) prohibits employment discrimination based on race and gender; public policy also protects servicemembers fulfilling military obligations.

103. North Carolina public policy (including N.C. Gen. Stat. § 168A-1 et seq. (North Carolina Persons with Disabilities Protection Act, or NCPDPA) prohibits discrimination against individuals with mental disabilities.

104. Bandy suffered mental disabilities. Urban went to Bandy's residence to check on his welfare to make sure he was safe. Lowe's fired Urban for doing so.

105. This runs contrary to public policy because it discourages North Carolina employees and residents experiencing mental health issues, like Bandy, from seeking and receiving the support and intervention they need. If such actions were penalized, good Samaritans, like Urban, would be disincentivized from assisting North Carolina colleagues and residents with

mental health disabilities, thereby undermining the purpose and protections of the North Carolina Persons with Disabilities Protection Act (NCPDPA) and broader public welfare principles.

106. Lowe's also fired Urban because he was a white male and a veteran who took time off of work to serve the United States.

107. Thus, as a direct and proximate cause of the actions of Lowe's, Urban suffered damages in an amount in excess of $75,000.

108. Urban is entitled to recovery of costs, including reasonable attorney's fees under 42 U.S.C. § 1988.

## Count IV

## TORTIOUS INTERFERENCE

(Against Defendant Bandy)

109. Plaintiff repeats and re-alleges each of the foregoing paragraphs as if set forth fully herein.

110. Bandy published false statements of fact to Lowe's HR, management, and/or others, asserting that Plaintiff was violent, aggressive, dangerous, or otherwise engaged in criminal or violent conduct.

111. These statements were false, made negligently or with actual malice, and were made for the purpose of terminating Urban's employment at Lowe's.

112. Had Bandy not made these false statements; Lowe's would not have terminated Urban's employment.

113. The false statements by Bandy to Lowe's constitute tortious interference with Urban's employment.

114. Bandy acted with both purposeful intent and reckless or callous indifference

towards Urban's rights, thereby entitling Urban to punitive damages.

115. Thus, as a direct and proximate cause of the actions of Bandy, Urban suffered damages in an amount in excess of $75,000.

116. Urban is entitled to recovery of costs, including reasonable attorney's fees under 42 U.S.C. § 1988.

**Count V**

**DEFAMATION**

(Against Defendants Lowe's and Bandy)

117. Plaintiff repeats and re-alleges each of the foregoing paragraphs as if set forth fully herein.

118. Bandy published false statements of fact to Lowe's HR, management, and/or others, asserting that Plaintiff was violent, aggressive, dangerous, or otherwise engaged in criminal or violent conduct.

119. These statements were false, made negligently or with actual malice; they were made on a privileged occasion if any, but with malice and abuse of the occasion sufficient to defeat any privilege.

120. Lowe's published false statements of fact to employees of Lowe's, asserting that Plaintiff was violent, aggressive, dangerous, or otherwise engaged in criminal or violent conduct.

121. Lowe's communicated with the North Carolina Department of Commerce that Urban visited another associate's residence without permission and made threatening statements.

122. These statements were false, made negligently or with actual malice; they were made on a privileged occasion if any, but with malice and abuse of the occasion sufficient to defeat any privilege.

123. The statements by Defendants constitute defamation per se because they (a) impute criminal or violent conduct and (b) impeach Plaintiff in his profession, causing presumed damages; in all events, Plaintiff suffered actual damages, including termination and reputational harm.

124. Both Lowe's and Bandy acted with both purposeful intent and reckless or callous indifference towards Urban's rights, thereby entitling Urban to punitive damages.

125. Thus, as a direct and proximate cause of the actions of Lowe's and Bandy, Urban suffered damages in an amount in excess of $75,000.

126. Urban is entitled to recovery of costs, including reasonable attorney's fees under 42 U.S.C. § 1988.

## DEMAND FOR JURY TRIAL

127. Under Rule 38(b) of the Federal Rules of Civil Procedure and Rule 38-1 of the Local Rules, Plaintiff demands trial by jury for all the issues pleaded here so triable.

## PRAYER FOR RELIEF

For these reasons, Plaintiff requests that this Court:

(a) For each count I—V, Urban seeks compensatory and punitive damages in an amount more than $75,000, together with costs, including reasonable attorney's fees under 42 U.S.C. § 1988.

(b) Grant such other and further relief as this Court sees as just and equitable.

This 20th day of October 2025.

**RANCHOR HARRIS LAW, PLLC**
**/s/ S. Ranchor Harris, III**
S. Ranchor Harris, III
N.C. Bar No. 21022
Ranchor Harris Law, PLLC
1784 Heritage Center Drive
Suite 204-E
Wake Forest, NC 27587

919-249-5006 (Direct Line)
919-589-4845 (Facsimile)
ranchorharris.com
ranchor@ranchorharris.com


**KUIPER LAW PLLC**
/s/ **Jacqueline Kuiper**
Jacqueline Kuiper, #0389387
Kuiper Law PLLC
5255 St Albans Bay Rd
Excelsior, MN 55331
(612) 481-2614
Jacqueline.d.kuiper@gmail.com

## Verification

**Matthew Urban**, first being duly sworn, disposes and says that I am the plaintiff named in this action; I have read the foregoing document and know the contents thereof; and the same is true of my own knowledge except as to those matters and things therein stated upon information and belief, as to those I believe them to be true.

_____
Plaintiff

**State of North Carolina**
**County of Mecklenburg**

Signed and sworn (or affirmed) before me this 20th day of October 2025, by Matthew Urban, who personally appeared before me and attested under oath that the foregoing statement is true and correct to the best of his knowledge and belief.

☐ I have personal knowledge of the identity of the principal;

☒ I have seen satisfactory evidence of the principal's identity, by a current state or federal identification with the principal's photograph in the form of a United States Passport;

☐ A credible witness _____ has sworn to the identity of the principal;

STEPHEN A MARSHALL
Notary Public (Printed Name)

_____
Notary Public (Signature)

My commission expires: 02/01/28